UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANJAL GUATAM,<br><br>                                  Petitioner,<br>v.<br><br>CORRECTIONAL CORP OF AMERICA and OTAY MESA IMMIGRATION COURT,<br><br>                                Respondents. | Case No.: 3:25-cv-3600-JES-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Anjal Guatam's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's order to show cause, Respondents filed a return to the petition. ECF No. 4. After due consideration and for the reasons stated below, the Court **GRANTS** the petition.

## I.    BACKGROUND

Petitioner, proceeding pro se, is an 18-year-old citizen of Nepal who entered the United States around January 5, 2025. ECF No. 1 at 1. Petitioner alleges that he escaped from his country for fear of his life. *Id.* He alleges that Border Patrol apprehended him while he attempted the cross the border. *Id.*; *see* ECF No. 4-1 at 5-6. On January 6, 2025, Petitioner was determined to be inadmissible and placed into section 235 expedited

removal proceedings. ECF No. 1-2 at 6. Petitioner is currently being detained at Otay Mesa Detention Center ("OMDC"). ECF No. 1 at 3.

Petitioner claimed asylum, and on February 22, 2025, he received a credible fear interview that resulted in a positive finding. *See* ECF No. 1-2 at 8-33. On February 25, 2025, Petitioner received a Notice to Appear ("NTA"), taking him out of expedited removal and placing him into section 240 removal proceedings. ECF No. 1-2 at 1. The NTA stated that his next hearing date was to take place on March 6, 2025. *Id.*

Petitioner claims that after being detained for almost six months, he requested a bond hearing but it was denied. ECF No. 1 at 4. In the order from the Immigration Judge ("IJ"), it stated that Petitioner requested a custody redetermination hearing, but that the IJ denied it "due to lack of jurisdiction." ECF No. 4-1 at 15-16.

In his petition, Petitioner requests that the Court order his release on bond or parole. ECF No. 1 at 9.

## II.     LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

//
//

## III.  DISCUSSION

In Respondents' return to the petition, they raise several issues: (1) this Court lacks jurisdiction over this petition because Petitioner failed to name the warden of OMDC in his petition; (2) Petitioner's claim is jurisdictionally barred by 8 U.S.C. § 1252; (3) Petitioner is lawfully detained under § 1225; and (4) his detention has not become unconstitutionally prolonged. ECF No. 4. The Court will address each of these issues in turn.

### A.  Jurisdiction for Failing to Name Warden

As a threshold issue, Respondents argue that this Court lacks jurisdiction over the petition because Petitioner failed to name the Warden of the institution where he is being detained, OMDC, in his petition. ECF No. 4 at 4.

Respondents are correct that habeas petitions generally require the Petitioner to name the person who has custody over him. 28 U.S.C. § 2242 ("It shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."); *see Doe v. Garland*, 109 F. 4th 1188, 1197 (9th Cir. 2024) ("[C]ore habeas petitioners challenging their present physical confinement [must] name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition."). As such, Respondents argue that district courts have dismissed petitions for lack of jurisdiction when the warden of the detention facility is not specifically named in the petition. *See, e.g.*, *Mukhamadiev v. U.S. Dep't of Homeland Security*, No. 25-cv-1017-DMS-MSB, 2025 WL 1208913, at *3 (S.D. Cal. April 25, 2025).

However, some other district courts have acknowledged this technical defect, but do not dismiss the case, particularly where a pro se litigant is involved. *See Herrera-Ramirez v. United States*, No. 2:25-CV-01749-MMD-EJY, 2025 WL 3239043 (D. Nev. Nov. 19, 2025). In *Herrera*, the Court recognized the Ninth Circuit's statement in *Doe* as cited above and while acknowledging that the petitioner there only named the Attorney General and the ICE field office director, the court stated:

>In this way, the Petition does not follow the requirements laid out by statute. But notably, the *Doe v. Garland* petitioner was represented by multiple attorneys and civil rights organizations. *See* 109 F.4th at 1189. Here, Petitioner is unrepresented. The Court "has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

*Id.* at *2. Thus, the court there retained jurisdiction and addressed the case on the merits. *See also Singh v. Field Off. Dir., San Francisco Field Off., United States Immigr. & Customs Enf't*, No. 24-CV-03472-RMI, 2024 WL 4454824, at *1 (N.D. Cal. Sept. 9, 2024) (petitioner filed wrong district and without naming warden but court transferred to the correct district instead of dismissing the case "which would only delay this matter and unduly burden Petitioner").

Thus, in light of Petitioner's pro se status and the liberty interests at issue, the Court follows suit and will address the petition on the merits rather than dismiss the petition.

### B. Jurisdiction and Section 1252

The arguments with regards to jurisdiction being barred under 8 U.S.C. § 1252 are identical to those recently addressed by the undersigned in *Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025). The Court adopts it reasoning as to these issues and incorporates it by reference. *See also Beltran et al. v. Noem et al.*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3-4 (S.D. Cal. Nov. 4, 2025) (holding same).

Accordingly, the Court finds that the jurisdiction stripping provisions of 8 U.S.C. § 1252 do not strip it of jurisdiction to hear Petitioner's claims.

### C. Detention Under § 1225 and Length of Detention

Respondents argue that Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1225(b) because he was detained at the border as an "applicant for admission" and he has never been granted any form of parole. ECF No. 4 at 6-7. Further, Respondents argue that Petitioner's detention has not become constitutionally prolonged. *Id.* at 7-11.

The Court agrees that Petitioner was detained at the border and has not been granted any form of parole, so Respondents have the authority to detain him under § 1225(b). However, the Court disagrees that no due process violation can arise, as Respondents claim. ECF No. 4 at 7-9. Respondents essentially argue that § 1225(b) provides no limitation on the length of detention and that the statute provides all the due process that the petitioner is owed. *Id.* This position has been called into question by the Ninth Circuit:

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (alteration in original). Indeed, numerous district courts have found that prolonged mandatory detention at some point will raise due process considerations. *See Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.") (internal citation omitted); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). Further, even Respondents recognize in their return that district courts within this Circuit have found a potential due process

violation to arise when the detention has become too prolonged. *See id.* at 9-11 (citing *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) and analyzing factors).

"Neither the Ninth Circuit nor the Supreme Court have provided guidance regarding the point at which an immigration detainee's prolonged mandatory detention becomes unconstitutional." *Amado v. United States Dep't of Just.*, No. 25CV2687-LL(DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025). Thus, district courts within this Circuit have employed similar but slightly varying tests. In the *Lopez* case cited by Respondents, the court employed a test with three factors to decide when mandatory detention under § 1226(c) becomes unconstitutionally prolonged: "the total length of detention to date, the duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." 631 F. Supp. 3d at 879. In *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), the district court considered the following six factors in the § 1225(b) context: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." Other courts have simply applied the generalized *Mathews v. Eldridge*, 424 U.S. 319 (1976), procedural due process test. *See Henriquez v. Garland*, No. 22-cv-869-EJD, 2022 WL 2132919, at *5-6 (N.D. Cal. June 14, 2022).

The Court finds it most appropriate to apply the *Banda* test to Petitioner's detention here under § 1226(b), as other courts within this district have done in the past.[1] *See, e.g.*, *Amado*, 2025 WL 3079052, at *5 (applying 6-factor *Banda* test to mandatory detention under § 1226(b)); *Kadir v. LaRose*, 25CV1045-LL-MMP, 2025 WL 2932654 (S.D. Cal. Oct. 15, 2025) (same); *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at

---

[1] Even though the Court does not employ the *Lopez* test as Respondents cite, the Court notes that the *Lopez* factors are a subset of the *Banda* factors. Based on a discussion of the *Banda* factors below, the Court would reach the same conclusion even if it were to consider solely the *Lopez* factors because it finds the first two *Lopez* factors to weigh in favor of Petitioner and the last factor to be neutral.

*4 (S.D. Cal. Sept. 26, 2025); *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025).

The first *Banda* factor, the length of detention, is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Petitioner has been detained since January 5, 2025, so his detention is at the one-year mark. While this factor itself is not dispositive, the length now is within the range such that this factor should weigh in favor of Petitioner. *Amado*, 2025 WL 3079052, at *5 ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" (citing cases) and finding detention of thirteen months to weigh in favor of the petitioner); *Sadeqi*, 2025 WL 3154520, at *3 (though "almost 12 months" detention was not dispositive, finding it to weigh in favor of petitioner); *Gao*, 2025 WL 2770633, at *5 ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period . . . qualifies as prolonged."); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'") (citation omitted). In even the *Lopez* case cited by Respondents, that court found a detention of "approximately one year" to weigh in favor of the petitioner and recognizing that "[d]istrict courts have found shorter lengths of detention . . . without a bond hearing to be unreasonable." Thus, this first and most important factor weighs in favor of Petitioner.

The second *Banda* factor is the likely duration of future detention, and considers "anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119. Here, Respondents claim that Petitioner has an

upcoming hearing on March 3, 2026.[2] The records indicate that after Petitioner was put in section 240 removal proceedings, he had an initial hearing on March 6, 2025, and there is no information regarding what kind of hearing this March 2026 hearing will be, particularly whether it will even result in a final decision in his removal proceedings. Even if it were, however, a removal order may not become final until after the appeals Petitioner could file, to both the Board of Immigration Appeals and Ninth Circuit. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020) ("The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed. . . . If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals."). These appeals can take a long time. *See Banda*, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer). In *Banda*, the petitioner had a final removal order from an IJ and had just filed an appeal to the BIA, and the court still found that this factor favored the petitioner. Here, Petitioner's removal is not even yet final, so the Court finds even more reason to find that this factor falls in his favor.

The third *Banda* factor is regarding the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at OMDC are "indistinguishable from penal confinement." *See Kydyrali*, 499 F. Supp. 3d at 773; *Amado*, 2025 WL 3079052, at *6. Further, Petitioner is only 18 years old, does not have any criminal history, and in his petition, alleges that it has been very difficult for him to be

---

[2] The Court notes that the origin of this date is unclear because Respondents do not submit any official documentation stating that Petitioner has an immigration court hearing on this date. Respondents instead cite to Petitioner's letter the Court included in his original Petition (*see* ECF No. 4 at 11 citing to ECF No. 1 at 1), but this letter from Petitioner only states that "my individual is on the 03/03/2026."

8

away from his family and he has trouble eating and sleeping. ECF No. 1 at 1. The Court finds that this factor also weighs in favor of Petitioner.

The <u>fourth</u> and <u>fifth</u> *Banda* factors look to the nature and extent of any delays in the removal proceedings caused the petitioner and then the government respectively. *Banda*, 385 F. Supp. 3d at 1119-1120. There is no indication in any of the filings before the Court that either Petitioner or Respondents caused any delays in the proceedings. Thus, the Court finds that both of these factors are neutral.

The <u>sixth</u> *Banda* factor looks to the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 ("In other words, the Court considers whether the noncitizen has asserted any defenses to removal."). Here, Petitioner has in his favor a positive credible fear determination, but there is no other information provided to the Court regarding how an IJ would eventually rule on his removal proceeding. Thus, the Court finds this factor mostly neutral, weighing at most only slightly in favor of Petitioner.

In summary, at least three of the six factors weigh in favor Petitioner, with the other factors being neutral. Accordingly, the Court concludes that Petitioner's nearly year-long detention under § 1225(b) has become unreasonable and due process requires the Government to provide him with an individualized bond hearing at this time.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and **ORDERS** as follows:

(1) The Court **ORDERS** Respondents to provide Petitioner with an individualized bond determination hearing within **ten days** of this Order. At the hearing, the government bears the burden of establishing by clear and

convincing evidence that Petitioner is a danger to the community or a flight risk if released.[3]

(2)  Respondents are **ORDERED** to File a Notice of Compliance within **five days** of providing Petitioner with the bond hearing, including apprising the Court of the results of the hearing.

The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: January 5, 2026

Honorable James E. Simmons Jr.
United States District Judge

---

[3] As courts have recognized, due process violations on this ground entitles Petitioner to a "a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Sadeqi*, 2025 WL 3154520, at *4 (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) and *Martinez v. Clark*, 124 F.4th 775, 785-86 (9th Cir. 2024)); *see also Kadir*, 2025 WL 2932654, at *6 (ordering similar relief, including specifying proper standards to be applied at bond hearing); *Idiev v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-01030-SKO (HC), 2025 WL 3089349, at *6 (E.D. Cal. Nov. 5, 2025) (ordering bond hearing where "the government must justify Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the community").